UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ANIMAL WELFARE INSTITUE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CV-08-267-B-W |
| | ) | |
| ROLAND D. MARTIN, | ) | |
| Commissioner of the Maine Department of | ) | |
| Inland Fisheries and Wildlife, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Following the recent revelation of the death of a second Canada lynx, a threatened species, in the span of two weeks from a Conibear trap, the Plaintiffs filed an emergency motion for temporary restraining order (Docket # 63). Finding that the recent taking likely occurred despite, not because of Maine's newly amended regulatory scheme, the Court denies the Plaintiffs' motion, since the Plaintiffs failed to demonstrate a causal nexus between the exercise of state authority and Endangered Species Act violations.

**I.      STATEMENT OF FACTS**

**A.      The Preliminary Injunction Order**

On November 26, 2008, the Court issued an Order granting in part and denying in part Plaintiffs' motion for preliminary injunction. *Order on Mot. for Prelim. Inj. and Mot. for Leave to File Rebuttal Decl. and Supplemental Decl.* (Docket # 53). Specifically, the Court ordered the state of Maine "to immediately take all action necessary to avoid the trapping of Canada lynx in Conibear traps, including the

promulgation of emergency regulations, if necessary, to assure that Canada lynx do not have access to Conibear traps either by way of the structure upon which the Conibear trap is placed or by way of adjacent structures." *Id.* at 64.  In response, on December 4, 2008, the Maine Department of Inland Fisheries and Wildlife (DIFW) adopted an emergency rule imposing limitations on the manner in which Conibear traps may be set. *Notice/Correspondence Re: Promulgation of Emergency Rule* (Docket # 60).

### B. The State and Federal Investigation

On November 7, 2008, a state of Maine game warden gave a licensed trapper in Maine a warning for violating a series of trapping regulations.  *Pls.' Mot. for Emergency TRO* Attach. 3 at 6 (Docket # 63-4).  On November 16, 2008, two wardens confiscated seventeen illegal traps set by the same trapper.  *Id.*  They summonsed the trapper for two counts of illegally trapping with exposed bait, two counts of illegally trapping on a leaning tree with a diameter of more than four inches, and one count of illegally trespassing, and on December 3, 2008, the trapper pleaded not guilty to these charges.  *Id.*

On December 4, 2008, the same two state game wardens found a dead Canada lynx in Stacyville, Maine, located about fifty yards from a location where an illegal Conibear trap had been set by this same trapper.  *Id*.  An inspection of the tree where the trap had been located suggested that the lynx had been caught by an illegally set Conibear trap, and had struggled and died.  *Id.*  The wardens concluded that the lynx had been caught by one of its front legs in a Conibear trap and had died hanging from the trap.  *Id.* at 7.  It appeared that the lynx had then been removed from the trap and discarded.  *Id.*

On December 5, 2008, a special agent from the United States Fish & Wildlife Service (USFWS) applied for a search warrant in federal court, setting forth these facts

2

and seeking permission to search and seize items potentially relevant to the wardens' investigation. *Id.* at 4. The USFWS Special Agent averred that he was seeking items "which constitute evidence of violation of 16 U.S.C. §§ 1531 et seq. and especially § 1538(a)(1)(G), and 50 C.F.R. § 17.21(d)(1) and 50 C.F.R. § 17.31(a) and the Lacey Act, 16 U.S.C. § 3372(a)(1)." *Id.* at 9. On December 5, 2008, a magistrate judge granted the search warrant. *Id.*

### C. The Emergency Motion for Temporary Restraining Order

In response, on December 12, 2008, the Plaintiffs moved for an emergency temporary restraining order to enjoin the DIFW from authorizing the use of Conibear traps for the remainder of Maine's 2008 trapping season or, in the alternative, to require that the DIFW implement a twenty-four hour trap check time for all Conibear traps. *Pls.' Mot. for Emergency TRO* (Docket # 63). Noting that in two weeks, two lynx "have been trapped, tortured, and killed in Conibear traps in Maine" and that the lynx "did not die immediately, but died very slow, painful deaths," the Plaintiffs assert that the manner of trapping was "currently legal pursuant to Maine's trapping regulations." *Pls.' Mot. for Emergency TRO* Attach. 1 at 1 (Docket # 63-2). They say that the trapper's discarding of the lynx is an example of "the 'shoot, shovel, shut up' mentality that, unfortunately, pervades a segment of the trapping community." *Id.* at 3. At the same time, the Plaintiffs acknowledge that they "do not have adequate information on the second lynx killing to determine the extent to which it was in compliance (or not) with the regulations due to the lack of DIFW's cooperation and information." *Id.* at 6.

### D. The Trappers' Response

The Trappers responded on December 15, 2008. *Def-Intervenors' Initial Resp. to Pls.' Emergency Mot. for TRO* (Docket # 65) (*Trappers' Resp.*). The Trappers say that the trap that killed the second Canada lynx was illegally set. *Id.* at 2. They contend the affidavit for the search warrant establishes "multiple other violations of the trapping laws by this trapper (e.g. exposed bait violations, possession of untagged marten, criminal trespass)." *Id.* They assert that if the Court grants the Plaintiffs' relief, the Order would run afoul of the Tenth Amendment. *Id.* at 5.

### E. The State's Response

The state of Maine did not file a written response. However, the Court held oral argument on the motion by telephone conference on December 15, 2008 and the state made its position plain. *Minute Entry* (Docket # 68). The state deflected the Plaintiffs' accusation that it had failed to present the investigative reports to them by noting that the investigation was headed by the USFWS and was not readily available to the state. The state also confirmed that based on its review of the investigative material that has been supplied, the trap that killed the second lynx was set in violation of the new Conibear regulations. Further, the state observed that the United States Attorney and USFWS are pursuing potential federal law violations. The state's main point, however, was that the ESA does not contemplate federal court intervention if the threatened species was taken in violation of the state's laws and regulations.

## II. DISCUSSION

To determine whether to issue a temporary restraining order, the Court applies the same four-factor analysis used to evaluate a motion for preliminary injunction.

4

*Northwest Bypass Group v. United States Army Corps of Eng'rs*, 453 F. Supp. 2d 333, 337 (D.N.H. 2006). Those well established factors are:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and, (4) the effect (if any) of the court's ruling on the public interest.

*Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 17-18 (1st Cir. 2006) (quoting *Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004). As with a preliminary injunction, the party seeking relief bears the burden of demonstrating that these factors "weigh in its favor." *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003).

The Court has reviewed and considered the motion and its attachments, and concludes that Plaintiffs have failed to meet the standards for the issuance of a temporary restraining order. Since the Court issued its order on Plaintiffs' motion for preliminary injunction, one additional lynx has been found killed. Significantly, this additional take of lynx was apparently in violation of the newly adopted emergency rule, and is the subject of an ongoing law enforcement investigation. In *Strahan v. Coxe*, the First Circuit carefully limited the circumstances under which a federal court may subject a state government to injunctive relief under the Endangered Species Act: "We believe that . . . the district court properly found that a governmental third party pursuant to whose authority an actor directly exacts a taking of an endangered species may be deemed to have violated the provisions of the ESA." 127 F.3d 155, 163 (1st Cir. 1997). As Judge Davis recently observed in *Animal Protection Institute v. Holsten*, to link the state to a

violation of the ESA, the state's "licensure and regulation of trapping [must be] the 'stimulus' for the trappers conduct that results in incidental takings. Accordingly, the trappers conduct [must not be] an independent intervening cause that breaks the chain of causation between the [state] and the incidental takings of lynx." 541 F. Supp. 2d 1073, 1079 (D. Minn. 2008).

To prevail, the Plaintiffs must demonstrate that "it is not possible for a licensed [trapper] to use [his traps] in the manner permitted by the [state of Maine] without risk of violating the ESA by exacting a taking." *Coxe*, 127 F.3d at 164. Here, the Plaintiffs have demonstrated that if a trapper violates Maine law and regulation, it may and likely will result in the illegal taking of a lynx. However, Plaintiffs have produced no new evidence of harm to lynx caused by trappers acting in compliance with existing state law. Accordingly, Plaintiffs have not shown that the state's licensure scheme as recently modified violates the ESA. Without more, the Court cannot find that Plaintiffs have satisfied their burden to attain the extraordinary remedy they seek.

### III. CONCLUSION

Accordingly, it is hereby ORDERED that the Plaintiffs' Motion for Emergency Temporary Restraining Order (Docket # 63) be and hereby is DENIED.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of December, 2008